MALCOLM C. HOWELL, TRANSFEREE, ET AL.,[1] PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1406–62, 1416–62, 1433–62, 1434–62, 1435–62, 1445–62, 1448–62, 1449–62.
Filed September 12, 1963

---

[1] Proceedings of the following petitioners are consolidated herewith: H. Clay Howell, Transferee, Docket No. 1416–62; Ruth H. Browning, Transferee, Docket No. 1433–62; William S. Howell, Transferee, Docket No. 1434–62; Otillie Howell, Transferee, Docket No. 1435–62; John B. Howell, Transferee, Docket No. 1445–62; Park Lake Land Co., Docket No. 1448–62; and Dudley B. Kimball, Transferee, Docket No. 1449–62.

*Samuel Byer*, for the petitioners.
*Arthur Pelikow*, for the respondent.

942

OPINION

RAUM, *Judge:* The narrow question before us is whether Park Lake, at the time of the resolution of May 23, 1958, was already operating under a much earlier (1946) resolution calling for complete liquidation, so as to render inapplicable the nonrecognition provisions of section 337(a) of the 1954 Code. Section 337(a) provides:

SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.

(a) GENERAL RULE.—If—

(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and

(2) within the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,

then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

Petitioners argue that the 1946 resolution did not represent a plan of complete liquidation. We hold otherwise.

In 1946 Park Lake entered into a formal plan of liquidation and filed Form 966 pursuant to section 148(d) of the Internal Revenue Code of 1939 with the then collector of internal revenue. Section 148(d) of the Internal Revenue Code of 1939 provides:

(d) CONTEMPLATED DISSOLUTION OR LIQUIDATION.—Every corporation shall, within thirty days after the adoption by the corporation of a resolution or plan for the dissolution of the corporation or for the liquidation of the whole or any part of its capital stock, render a correct return to the Commissioner, verified under oath, setting forth the terms of such resolution or plan and such other information as the Commissioner shall, with the approval of the Secretary, by regulations prescribe.

Park Lake did not, at the time of its resolution, or at any other time prior to 1959, liquidate "the whole or any part of its capital stock." Thus Park Lake filed Form 966 because the course of action it was to pursue was, in the words of section 148(d), an "adoption by [Park Lake] of a resolution or plan for [its] dissolution." [2]

The only reasonable construction of the 1946 resolution is that it was a plan of complete liquidation which was to be, in its own words, "effected as soon as possible, contingent upon the disposition of what remains of its property." A plan of liquidation may extend over a number of years and may be carried out notwithstanding that the liquidating corporation is meanwhile engaging in some business activities. Cf. *Bynum* v. *Commissioner*, 113 F. 2d 1 (C.A. 5), reversing 40 B.T.A. 336; *R. D. Merrill Co.*, 4 T.C. 955, 969–970; *Rollestone Corporation*, 38 B.T.A. 1093, 1105; *T. T. Word Supply Co.*, 41 B.T.A. 965, 980–981.

The action taken subsequent to the 1946 resolution is consistent with a plan of complete liquidation. Between 1946 and 1958 properties were sold and distributions to shareholders were made; after the resolution of November 6, 1946, and prior to 1958, Park Lake sold property in the amount of $53,050 and made distributions in the amount of $57,000. No new property was acquired. All of the distributions were designated "liquidating" or "partial liquidating" dividends. These sales and distributions resulted in a marked contraction of corporate activity and a substantial reduction in corporate assets. There was no mention in the corporate records of any abandonment of the 1946 plan. Indeed, petitioners do not contend that they abandoned the 1946 plan, but rather that the November 6, 1946, resolution was not a plan of complete liquidation, and that the conduct of the corporate affairs after 1946 shows that it was not a plan of complete liquidation. In that connection they point to the fact that prior to 1958 the corporation had sold only the Boonton and Rainbow Trail properties and had not yet disposed of any part of the Route 46 tract. We do not agree that this fact is sufficient to overcome the significance of the language of the 1946 resolution and the other considerations noted above. The course of action

---

[2] Regs. 111, sec. 29.148–2, provide:

RETURN OF INFORMATION RESPECTING CONTEMPLATED DISSOLUTION OR LIQUIDATION.— (a) *Making and filing of returns.*—Within 30 days after the adoption of any resolution or plan for or in respect of the dissolution of a corporation or the liquidation of the whole or any part of its capital stock, the corporation shall file with the Commissioner of Internal Revenue, Washington, D.C., attention of the Income Tax Unit, Records Division, a correct return on Form 966, made under oath or affirmation and containing the information required by paragraph (b) of this section and by such form. A like return shall be filed by the corporation in the case of any amendment of, or supplement to, a resolution or plan for or in respect of the dissolution of the corporation or the liquidation of the whole or any part of its capital stock. A return must be filed under section 148(d) in respect of a liquidation whether or not any part of the gain or loss to the shareholders upon the liquidation is recognized under the provisions of section 112.

followed by the corporation seems rather to support the view that the directors and stockholders desired to hold the more promising Route 46 property until the final step in the liquidation process with the expectation of obtaining the maximum yield therefrom.

The fact that there were some isolated negotiations for acquisition of additional Route 46 property is not inconsistent with an overall plan of liquidation. Such an acquisition may have been for the purpose of making more salable other Route 46 property held by Park Lake or for the purpose of resale when the time was propitious to dispose of the Route 46 property already owned. Entering into a related transaction with the expectation of profit in the course of winding up the affairs of a corporation would not be inconsistent with a plan of complete liquidation. Petitioners further contend that the reason for the liquidation of Park Lake was the impairment of Dudley Kimball's health. Although there is some evidence to this effect, we think that in the context of this case it more persuasively points to an intention to accelerate an existing plan to liquidate than to the adoption of a new plan.

Section 337 (a) by its very terms applies only in the case of a plan of complete liquidation adopted "on or after June 22, 1954." These provisions had no counterpart in prior law, and the date selected was one during the consideration of that legislation by the Congress. The plan before us was in fact adopted in 1946, and cannot be brought within the statute by a subsequent readoption. Certainly, in the case of a plan adopted and initiated after June 22, 1954, a subsequent readoption could not effectively extend the 12-month period. The "new" plan would be a nullity and would not qualify under the statute. To hold that the new plan would be effective to start the running of another 12-month period would be plainly contrary to the clear purpose of the statute.[3] Cf. Cohen, Gelberg, Surrey, Tarleau and Warren, "Corporate Liquidations Under The Internal Revenue Code of 1954," 55 Col. L. Rev. 37, 45, 46; MacLean, "Taxation of Sales of Corporate Assets in the Course of Liquidation," 56 Col. L. Rev. 641, 646.

Although section 337 was prospective in character, the 1954 Code made special provision for those corporations already in liquidation. Section 392(b)(1) provided for nonrecognition in such circumstances in respect of sales during the calendar year 1954, subject to certain conditions; and section 392(b)(3) made special provision in the case of plans adopted after December 31, 1953, and before June 22, 1954. As argued by the respondent, section 392(b)(1) was tailor-made for corporations like Park Lake, but it did not avail itself of those provi-

---

[3] To be distinguished are cases such as *Virginia Ice & Freezing Corporation,* 30 T.C. 1251, and *City Bank of Washington,* 38 T.C. 713, where the corporation had not yet adopted a plan of liquidation at the time of the transaction in question.

sions. They offered the only route to nonrecognition for corporations already in the process of liquidation as of January 1, 1954. Park Lake could not, some 4 years later, bring itself within section 337 by readopting in substance a 1946 plan of complete liquidation that had already been in operation since that time.

*Decisions will be entered for the respondent.*